[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 510 
Leonza Borden (hereinafter referred to as "Leonza") and Lance Borden (hereinafter referred to as "Lance") were separately indicted for trafficking in marijuana, in violation of §20-2-80(1), Code of Alabama 1975, and possession of cocaine, in violation of § 20-2-70. The defendants were joined for trial and found guilty, as charged. They were each sentenced to 21 years for trafficking in marijuana and 15 years for possession of cocaine, the sentences to run concurrently.
At about 8:00 a.m. on April 10, 1986, Lieutenant Alvin Kidd of the Sylacauga Police Department took up surveillance of the Borden residence. Nineteen-year-old Lance is Leonza's son and resided with him at the residence in question. Kidd watched the house for about three hours. From his vantage point and on three occasions, he observed a male enter the Borden residence. Each time one of the individuals came to the house, Leonza left the house; he walked to the vacant adjacent lot; after being gone thirty seconds to a minute, he returned to the house; and, then, the individual who had come to the house left. Kidd described his observation of Leonza in the following way:
 "He walked out of the house, looked around slowly, walked around behind the house, looked down the hill to the right and the left, and walked back to the corner of the house, looked, got down in a crouching position to walk up through the bushes."
Later that same day, Deputy Mike Martin of the Talladega Sheriff's Department obtained a search warrant. At approximately 3:30 p.m., seven law enforcement officers arrived at the Borden residence to execute the search warrant. The warrant was served on the Bordens. Thereafter, the officers searched the house, the yard, and the adjacent vacant lot where Kidd had seen Leonza make the three trips earlier that morning. No contraband was found in the house or the yard. The officers found trails leading from the Bordens' residence to the adjacent lot. Both cocaine and marijuana were found at various locations in the vacant lot. Marijuana was also found hidden across the street from the Borden residence.
While the officers were searching, Lance came out of the house and began "hollering" the following at Martin: "You're going to tell me something. You're going to tell me who told you we had marijuana." Martin responded, as follows: "Look, I don't have to tell you anything. Just be quiet." Lance replied, "Yeah, mother-fucker, you're going to tell me." Martin again asked him to be quiet. Yet, he kept yelling, "Yeah mother-fucker, you're going to tell me." By this time, some fifteen residents of the neighborhood had gathered in the road in front of the Bordens' residence, where they could hear the disturbance. Martin then instructed one of the officers to arrest Lance for disorderly conduct. The younger Borden resisted the arresting officer by "pushing, slinging and scuffling" and "cussing and calling everybody 'mother-fucker.' " He was forcibly placed in the police car and taken to headquarters.
After the search was completed, Leonza was asked by Martin if he would accompany an officer to the police station and consent to his fingerprints being taken. He agreed to go, stating the following: "My fingerprints ain't on nothing out there. I'll give you all the fingerprints you want." Pursuant to Leonza's inquiry of whether he was under arrest, Martin specifically told him that he was not under arrest. He was told that he would be given a ride to headquarters and, also, be brought back home. However, after he was fingerprinted, his family picked him up. He was subsequently arrested after he was indicted.
 I
The Bordens argue that under Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the court erred in not conducting a hearing to determine whether the prosecutor utilized his peremptory *Page 511 
challenges to purposefully strike blacks from the jury venire.
Subsequent to the selection of the jury, counsel for the Bordens made the following motion:
 "If it would please the Court, I would first like to move to strike the petit jury that has been impaneled in this cause, and as grounds therefore I would like to make it known there was twenty-one black persons subpoenaed for jury duty and subject to the strike; and that the District Attorney without probable cause struck all save two of the black persons, one, an alternate struck by the Defendant and in violation of the Constitutional Laws of the United States of America and the State of Alabama. We therefore move to strike the petit jury."
The prosecution moved that a Batson hearing be continued. In response to this request, counsel for the Bordens stated:
 "Let me respond in this way and ask the Court to hold my motion until the conclusion of this trial . . . whether by motion or by trial . . . and counsel will then either at that time ask the Court to take it up or withdraw it." (Emphasis added.)
The record indicates that, after this initial motion was made, defense counsel did not further pursue the matter. We can only conclude that defense counsel withdrew his request for a hearing. Furthermore, there being no adverse ruling by the trial court, we find there is nothing preserved for our review.
 II
The Bordens, relying on Mulhern v. State,494 So.2d 787 (Ala.Cr.App. 1986), argue that the prosecution did not prove a prima facie case of trafficking in marijuana because it failed to prove that the amount of marijuana contained within the plant material was in excess of 2.2 pounds of marijuana — the amount required by § 20-2-80. InMulhern, we found the following:
 "Therefore, while there is evidence that the total weight of green plant material possessed by the appellant was in excess of 2.2 pounds, there is no evidence that the quantity of marijuana contained within that total weight of the green plant material was sufficient to satisfy the requisite amount found in the enacting clause of § 20-2-80, Code of Alabama 1975."
Id. at 789. We agree with the Bordens and findMulhern to be similar to the instant case and, therefore, controlling.
In the instant case, Dr. Ronald Hubbard, a drug chemist with the Alabama Department of Forensic Sciences, testified about his examination of the plant material found in State's Exhibits Nos. 22, 23, 24, 26, 27, 28, 29, 31, 32, and 33. In describing the contents of these exhibits, he was asked about each individual exhibit. His testimony, in regard to all the exhibits except two, cannot be distinguished from that evidence found to be insufficient in Mulhern. As an example of this insufficiency, we quote the following testimony, which pertains to State's Exhibit 29:
 "One clear plastic bag containing plant material, revealed the presence of marijuana. The total weight was 4.0 grams."
The testimony concerning the other two exhibits — Exhibits 22 and 23 — that could conceivably be argued to be sufficient under Mulhern is, as follows:
 "Q. And what did your examination [of Exhibit 22] show that the green plant material contain[ed] the substance of?
"A. Marijuana.
 "Q. And what was the — did you have a weight on that?
"A. 3,099.2 grams or 109.13 ounces or 6.83 pounds.
 "Q. Did you test [Exhibit 23] for the presence of marijuana?
"A. Yes, sir, I did.
"Q. And what does that show?
"A. I found the presence of marijuana.
"Q. And the weight?
"A. 0.2 grams."
Any distinction, however, with the evidence found to be insufficient in Mulhern would rest upon a blatant ambiguity. When this particular testimony is considered in the context of Hubbard's testimony about the *Page 512 
other eight exhibits, we must necessarily conclude that this evidence was also insufficient.
Furthermore, in conclusion, Hubbard testified to the following:
 "Q. Ron, do you have a total weight of the cocaine that was found and the marijuana that was found?
"A. Yes, sir, I do.
"Q. What would that be, please, sir?
 "A. I had a total weight of plant material that revealed the presence of marijuana to be 4512.5 grams or 159.17 ounces or 9.94 pounds. That was the marijuana.
"Q. Okay.
 "A. Of the powder which revealed the presence of cocaine, the total weight was 2.796 grams. [State's Exhibit 25.]"
Hubbard's testimony clearly supports the premise that the Bordens were in possession of an excess of 2.2 pounds of green plant material. However, the testimony failed to specify that there was in excess of 2.2 pounds of marijuana contained in the plant material. From the testimony, we are unable to conclude whether all of the 9.94 pounds of the plant material was marijuana or whether a certain quantity of marijuana was included among various and assorted other plant materials.
The attorney general argues, in his brief, that appellants' objection has not been preserved for our review. We disagree. We find that defense counsel questioned the sufficiency of the evidence as to the weight of marijuana in his motion to dismiss made after the State rested. Furthermore, we reject the attorney general's argument that the testimony of the officer that State's Exhibit 22 was a large trash bag containing several "big clear bags full of marijuana" suffices as proof that the green plant material was, in fact, marijuana.
The trafficking in marijuana convictions are, therefore, reversed due to the insufficiency of the evidence, and judgments rendered for the defendants on those charges.
 III
Leonza and Lance argue that the prosecution failed to establish that they had constructive possession of the controlled substances found on the property adjoining their residence and, more particularly, that they knew of the presence of the controlled substances.
Before a person can be convicted of violating § 20-2-70, it must be proven beyond a reasonable doubt that he was in actual or constructive possession of one of the substances enumerated therein. Hamilton v. State, 496 So.2d 100
(Ala.Cr.App. 1986). Constructive possession arises only where the illegal substance is found on premises owned or controlled by the accused. Campbell v. State, 439 So.2d 718
(Ala.Cr.App.), rev'd on other grounds, 439 So.2d 723 (Ala. 1983). When constructive possession is relied upon, the prosecution must prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Yarbrough v. State, 405 So.2d 721
(Ala.Cr.App.), cert. denied, 405 So.2d 725 (Ala. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Templev. State, 366 So.2d 740 (Ala.Cr.App. 1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference.Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986). Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr.App. 1984); Temple v. State. "Also, when a joint venture is found joint possession may also be found, in that a jury may infer that the defendant had both knowledge of and control over the contraband in the possession of a companion." UnitedStates v. Dupuy, 760 F.2d 1492, 1500 (9th Cir. 1985), and cases cited therein.
The evidence offered by the prosecution to establish the Bordens' constructive possession of the controlled substances is based largely on circumstantial evidence; thus, this court must view that evidence in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. *Page 513 
1979). The test to be applied is "not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude." Id. at 875.
In the case sub judice, the prosecution's evidence consisted of the following: Observations, during a three-hour surveillance of the Borden residence, of Leonza making three cautious trips to the adjacent vacant lot, each time after a male individual had just arrived at the Borden residence; trails leading from the Borden residence to the various specific areas where the marijuana and cocaine were found in the vacant lot; Leonza's fingerprint on a container in which a bag of cocaine was found; the statement, "You're going to tell me who told you we had marijuana," made by Lance before he had any knowledge that the officers had indeed found marijuana; and Lance's fingerprints found on individual bags of marijuana inside a large trash bag discovered along one of the trails in the vacant lot.
We construe this evidence to show that Leonza and Lance were involved in a joint enterprise. This conclusion is further based not only on the father/son relationship, but also on their actions at the time of the search. Applying the preceding legal principles to the facts of this case, we must conclude that there was sufficient evidence presented by the prosecution to connect Leonza and Lance with both the cocaine and the marijuana. "[W]hen the presence of the accused at the scene is established and evidence of his knowledge of the presence of the prohibited substance is shown (even by circumstantial evidence), along with any other incriminating evidence, the issue of defendant's guilt should be submitted to the jury."German v. State, 429 So.2d 1138, 1143 (Ala.Cr.App. 1982).
 IV
Leonza asserts that the trial court erred in refusing to suppress his fingerprints taken from him, as being the fruits of an illegal detention.
The question of whether Leonza's apparent consent to custody and fingerprinting was, in fact, voluntary is to be determined by the totality of the circumstances. Cox v. State,489 So.2d 612 (Ala.Cr.App. 1985). In our review of the circumstances, we find that the trial court did not err in refusing to suppress Leonza's fingerprints, for the evidence supports the court's finding that Leonza was not illegally detained. Rather, the evidence supports the conclusion that he voluntarily accompanied the officer to the police station and consented to his fingerprints being taken.
Moreover, we also find that the officers had probable cause to arrest Leonza when he accompanied the officers to the police station for fingerprinting.
 V
Lance asserts that the trial court erred in refusing to suppress his fingerprints taken from him, as being the fruits of an illegal arrest.
Lance was arrested, without a warrant and at the scene of the search, for committing the misdemeanor of disorderly conduct in an officer's presence. Section 13A-11-7, Code of Alabama 1975, provides the following:
 "(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
 "(1) Engages in fighting or in violent tumultuous or threatening behavior; or
"(2) Makes unreasonable noise; or
 "(3) In a public place uses abusive or obscene language or makes an obscene gesture; or
 "(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
 "(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
 "(6) Congregates with other person [sic] in a public place and refuses to comply with a lawful order of the police to disperse. *Page 514 
"(b) Disorderly conduct is a Class C misdemeanor."
In reviewing the facts surrounding Lance's arrest, we find that Lance Borden engaged in threatening behavior that recklessly created a risk of public inconvenience and/or made unreasonable noise that recklessly created a risk of public inconvenience, in violation of both subsections (a)(1) and (2) of § 13A-11-7. His conduct in shouting obscenities at Deputy Martin, while outside, with sufficient loudness to cause numerous residents in the neighborhood to assemble in the road in front of the house, created a risk to those assembled in the road and to those passing by in automobiles on that road.
We find that Lance's arrest for disorderly conduct was entirely proper. Therefore, the court did not err in failing to suppress his fingerprints.
 VI
We have reviewed the remaining contentions raised in appellants' supplemental pro se briefs and find that they are without merit.
 VII
Leonza and Lance were sentenced to 21 years' imprisonment for trafficking in marijuana and 15 years' imprisonment for possession of cocaine. They assert that these sentences are in violation of their constitutional protection against cruel and unusual punishment. For the following reason, we find it unnecessary to address this issue at this time.
Previously, in this opinion, we reversed the trafficking in marijuana convictions for the prosecution's failure to prove the requisite amount of marijuana mandated by § 20-2-80, Code of Alabama 1975. The prosecution, however, clearly proved each and every element of possession of marijuana, §20-2-70, which is a lesser included offense of the crime charged.
The instant case appears to present a clear factual situation to which the doctrine of Edwards v. State,452 So.2d 506 (Ala.Cr.App. 1983), aff'd, 452 So.2d 508 (Ala. 1984), may be applied. See also Pack v. State, 461 So.2d 910
(Ala.Cr.App. 1984) (application of the Edwards
doctrine by this court). However, in affirming the Bordens' convictions for possession of cocaine, we do not deem it necessary to apply Edwards and find the Bordens also guilty of possession of marijuana. In Vogel v. State,426 So.2d 863 (Ala.Cr.App. 1980), aff'd, 426 So.2d 882 (Ala. 1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456,77 L.Ed.2d 1335 (1983), we stated the following:
 "[W]here . . . there is but a single point of control in time and place over several types of controlled substances, only a single offense has been committed, the offense of possession of controlled substances, and only one sentence is authorized."
To be certain that the invalid trafficking in marijuana convictions were not a factor considered in sentencing appellants for the possession of controlled substances, we remand this case for resentencing on the "possession" convictions. The resentencing should be held in accordance withVogel v. State, 426 So.2d 863 (Ala.Cr.App. 1980), aff'd, 426 So.2d 882 (Ala. 1982), cert. denied, 462 U.S. 1107,103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).
The court is also directed to prepare a return showing such sentence and to file same in this court after holding a hearing, with appellants and their attorney present.
JUDGMENTS OF CONVICTION OF TRAFFICKING IN MARIJUANA REVERSED AND JUDGMENTS RENDERED FOR DEFENDANTS; JUDGMENTS OF CONVICTION OF POSSESSION OF CONTROLLED SUBSTANCES AFFIRMED; CAUSE REMANDED WITH DIRECTIONS FOR RESENTENCING.
All Judges concur.
 ON RETURN TO REMAND
We remanded both causes here to the trial court solely for the imposition of single sentences within the limits mandated by § 20-2-70, Code of Alabama 1975. *Page 515 
On return, we find that in accordance with Vogel v.State, 426 So.2d 863 (Ala.Cr.App. 1980), aff'd,426 So.2d 882 (Ala. 1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456,77 L.Ed.2d 1335 (1983), the trial court held a hearing, with counsel for the Bordens present, and resentenced both appellants to 12 years' imprisonment. We find the sentences to be within the limits mandated by § 20-2-70, and, therefore, proper.
OPINION EXTENDED; AFFIRMED.
All Judges concur.