The appellant, J.F.C., was convicted in Daphne Municipal Court of criminal surveillance, a violation of Daphne City Ordinance No. 1987-8, adopting § 13A-11-32, Ala. Code 1975. He appealed his conviction to Baldwin Circuit Court for a trial de novo. Once in the circuit court, J.F.C. applied for, and was granted, youthful offender status. Following a bench trial, J.F.C. was adjudicated a youthful offender, based on the trial court's finding that he was guilty of criminal surveillance. He was sentenced to 6 months' imprisonment; that sentence was split, and he was ordered to serve 60 days in the Daphne municipal jail, followed by 2 years of supervised probation. This appeal followed.
J.F.C. contends that the evidence was insufficient to sustain his adjudication of guilt.
The pertinent evidence, viewed, as it must be, in the light most favorable to the City, shows the following. See Powe v. State,597 So.2d 721, 724 (Ala. 1991). On the evening of May 3, 1999, Baldwin County Deputy Sheriff Jimmy Milton was serving as an off-duty "courtesy officer" at Lake Forest Apartments, an apartment complex in Daphne. Sometime after 10:00 p.m., while securing the grounds for the night, Milton saw J.F.C. and another male crouched or "stooped" below the window of a ground-floor apartment in building 13 of the apartment complex. It appeared to Milton that J.F.C. was peering into the window, which was located on the side of the building, away from the front door of the apartment. Milton identified himself as a law enforcement officer and instructed the two men to stand up and turn around. Instead, the two men fled, each running in a different direction. Milton, who lived in the apartment complex, knew that J.F.C. also lived in the complex. He had had conversations with J.F.C. on previous occasions and was familiar enough with him to know which apartment he lived in. Milton went to J.F.C.'s apartment, which was located in building 3, and knocked on the door; however, he received no response to his knock. Milton reported the incident to the manager of the apartment complex and to the Daphne Police Department. The following day, J.F.C. was arrested and charged with criminal surveillance.
Milton testified that the apartment where he saw J.F.C. peering into the window was occupied at the time of the incident. However, he acknowledged that he did not knock on the door of the apartment after the incident to see if anyone was in the apartment at that time. He also stated that he had never talked to the residents *Page 600 
of that apartment about the incident. He could not recall whether the lights were on inside the apartment when the incident occurred.
J.F.C.'s father and J.F.C.'s fiancé testified as alibi witnesses. Both testified that on May 3, 1999, J.F.C. went to his parents' home in Milton, Florida, for a barbecue, and that he spent the night there, returning to Daphne the following morning.
Section 13A-11-32(a), Ala. Code 1975, states: "A person commits the crime of criminal surveillance if he intentionally engages in surveillance while trespassing in a private place."
In challenging the sufficiency of the evidence, J.F.C. argues that the City failed to establish that he was trespassing in a private place, as required by § 13A-11-32. He maintains that the alleged act of surveillance occurred in a "public place." Although he concedes that the property on which the alleged act occurred — i.e., the area immediately outside the apartment window — was privately owned, he argues that the property was in a common area of the apartment complex, which, he says, as a tenant of the apartment complex he was licensed and privileged to be on.
"Trespass" has been defined as "any entry on the land of another without express or implied authority." Foust v. Kinney, 202 Ala. 392,393, 80 So. 474, 475 (1918). Criminal trespass in the third degree has been defined as "when [a person] knowingly enters or remains unlawfully in or upon premises." § 13A-7-4(a), Ala. Code 1975. Section13A-11-30(2), Ala. Code 1975, defines "private place" as "[a] place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but such term does not include a place to which the public or a substantial group of the public has access."
Legislative intent is the "`polestar' of statutory construction."Richardson v. PSB Armor, Inc., 682 So.2d 438, 440 (Ala. 1996). Legislative intent may be gleaned from "the language used, the reason and necessity for the act, and the purpose sought to be obtained." TuscaloosaCounty Comm'n v. Deputy Sheriff's Ass'n of Tuscaloosa County,589 So.2d 687, 689 (Ala. 1991) (citing Ex parte Holladay, 466 So.2d 956
(Ala. 1985)). Furthermore, "`[i]t is a "well established principle of statutory interpretation that the law favors rational and sensible construction."'" Goodwin v. State, 728 So.2d 662, 668 (Ala.Crim.App. 1998) (quoting King v. State, 674 So.2d 1381, 1383 (Ala.Crim.App. 1995)).
In explaining the definition of "private place," the Commentary to § 13A-11-32, Ala. Code 1975, states: "A private hotel room would be included [in the definition of private place] while the hotel lobby would not." We agree with the City that the Commentary to the criminal surveillance statute makes it clear that the definition of "private place," as that term is used in § 13A-11-32, is "intended to include private rooms within multiple occupant buildings that have other areas accessible to multiple occupants." (City's brief at 11.) The expectation of privacy in an apartment is at least as great as in a hotel room. Certainly, an individual standing at the window of another's apartment, peering into the apartment, is standing in a private place. Further, even if such an individual is generally licensed and privileged to use the common areas of the property on which the apartment building is situated, that license and privilege does not extend to using the common areas in a manner so as to invade the privacy of the residents of other apartments located on the property. *Page 601 
Deputy Sheriff Milton testified that he saw J.F.C. late at night crouched below the window of another resident's apartment, peering into the window. When Milton identified himself as a law enforcement officer and instructed J.F.C. and his companion to stand still, the two men fled. His flight raised a legitimate inference of J.F.C.'s consciousness of guilt. See, e.g., Ex parte Clark, 728 So.2d 1126, 1136-37 (Ala. 1998); see also C. Gamble, McElroy's Alabama Evidence § 190.01(1) (5th ed. 1996). We find that the evidence presented by the City was sufficient to show that J.F.C. was trespassing in a private place, as required by § 13A-11-32, Ala. Code 1975.
In challenging the sufficiency of the City's evidence, J.F.C. further argues that the City had to prove that he actually saw a person inside the apartment to prove that he committed the act of criminal surveillance. He contends that Deputy Sheriff Milton's testimony in this regard was insufficient to establish this fact.
Section 13A-11-30(3), Ala. Code 1975, defines "surveillance" as "[s]ecret observation of the activities of another person for the purpose of spying upon and invading the privacy of the person observed." Because our research reveals no Alabama caselaw addressing this specific issue, we have looked to other jurisdictions for guidance. Our research reveals that Georgia's "Peeping Tom"[1] statute (§ 16-11-61, Ga. Code Ann.) is substantially similar to Alabama's criminal surveillance statute with regard to the elements of the offense: the perpetrator must be guilty of peeping through doors or windows, while on the premises of another, for the purpose of spying upon or invading the privacy of the person spied upon. Moreover, the Georgia Court of Appeals has declined to hold that it is necessary to prove that anyone was actually in the room into which the perpetrator looked in order to sustain a conviction under Ga. Code Ann., § 26-3002 (the predecessor statute to § 16-11-61). We cite with approval from Chance v. State, 154 Ga. App. 543, 268 S.E.2d 737 (1980):
 "The evidence here shows that the appellant was peeping through the lighted window of another at night under compromising circumstances. This supports a finding that appellant's activity was for `the purpose of spying upon the privacy of the occupants of the residence, and this whether or not it be shown that any person was actually in any room into which [the appellant] looked, since, if the gravamen of this offense is spying for this unlawful purpose, and it be shown that the spying took place, and the purpose is inferable from the circumstances of the case, the guilt or innocence of [the appellant] does not in any sense hang upon a matter of chance as to whether the persons upon whom he sought to spy were actually in his view.' Butts v. State, 97 Ga. App. 465, 103 S.E.2d 450, 451 (1958). . . . The prohibited act is `peeping' with the requisite wrongful purpose or intent. If the act and the intent are in concurrence, the crime is complete regardless of what or who may or may not be subject to the perpetrator's unlawful gaze."
154 Ga. App. at 543-44; 268 S.E.2d at 737-38. Accord State v. Serrano,145 Ariz. 498, 501, 702 P.2d 1343, 1346 (Ariz.Ct.App. 1985) (holding, with respect to a similar Arizona statute, "The prohibited act is *Page 602 
looking into the residential structure with the requisite wrongful purpose or intent . . . regardless of what or who may or may not be subject to the perpetrator's unlawful gaze.").
Such an interpretation is consistent with the purpose of the Alabama statute as well. Indeed, any other interpretation would be illogical. Furthermore, it would frustrate the purpose of the statute to hold that it is necessary to prove that the defendant engaging in the surveillance actually saw another person in order to constitute a violation of §13A-11-32, Ala. Code 1975. The prohibited act is surreptitious observation, coupled with the wrongful purpose of spying upon and thus invading the privacy of another person. Here, J.F.C. was seen peering into the window of another resident's apartment. Given the attendant circumstances — the late hour and the fact that J.F.C. was crouched below the window — the reasonable inference is that J.F.C. was peering into the apartment window for the purpose of spying upon and invading the privacy of the occupants of that particular apartment. The evidence was sufficient to sustain J.F.C.'s adjudication as a youthful offender based on his being guilty of criminal surveillance, as proscribed by § 13A-11-32, Ala. Code 1975.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMillan, P.J., and Baschab, J., concur.
Shaw, J., concurs specially, with opinion.
Cobb, J., dissents, with opinion.
[1] In legend, Peeping Tom was a citizen of Coventry, who popped out his head as the naked Lady Godiva passed, and was struck blind for it.Oxford English Dictionary 2113 (Compact ed. 1971). See also Merriam-Webster's Collegiate Dictionary 857 (10th ed. 1997).