LYONS, Justice.
I. Facts and Procedural History
J.F.C. was convicted in the Daphne Municipal Court of criminal surveillance, a violation of Daphne City Ordinance No. 1987-8, adopting § 13A-11-32, Ala.Code 1975. He was sentenced to 6 months’ imprisonment; that sentence was split, and J.F.C. was ordered to serve 60 days in the Daphne municipal jail, followed by 2 years of supervised probation. The Court of Criminal Appeals affirmed the conviction. J.F.C. v. City of Daphne, 844 So.2d 597 (Ala.Crim.App.2001). This Court granted certiorari review to determine whether the evidence was sufficient to sustain J.F.C.’s conviction for criminal surveillance.
The facts as described in the Court of Criminal Appeals’ opinion are as follows:
“On the evening of May 3,1999, Baldwin County Deputy Sheriff Jimmy Milton was serving as an off-duty ‘courtesy officer’ at Lake Forest Apartments, an apartment complex in Daphne. Sometime after 10:00 p.m., while securing the grounds for the night, Milton saw J.F.C. and another male crouched or ‘stooped’ below the window of a ground-floor apartment in building 13 of the apartment complex. It appeared to Milton that J.F.C. was peering into the window, which was located on the side of the building, away from the front door of the apartment. Milton identified himself as a law enforcement officer and instructed the two men to stand up and turn around. Instead, the two men fled, each running in a different direction. Milton, who lived in the apartment complex, knew that J.F.C. also lived in the com *605 plex. He had had conversations with J.F.C. on previous occasions and was familiar enough with him to know which apartment he lived in. Milton went to J.F.C.’s apartment, which was located in building 3, and knocked on the door; however, he received no response to his knock. Milton reported the incident to the manager of the apartment complex and to the Daphne Police Department. The following day, J.F.C. wás arrested and charged with criminal surveillance.
“Milton testified that the apartment where he saw J.F.C. peering into the window was occupied at the time of the incident. . However, he acknowledged that he did not knock on the door of the apartment after the incident to see if anyone was in the apartment at that time. He also stated that he had never talked to the residents of that apartment about the incident. He could not recall whether the lights were on inside the apartment when the incident occurred.”
II. Sufficiency of Evidence
' J.F.C. argues that the Court of Criminal Appeals erred in affirming his conviction for criminal surveillance. Alabama’s criminal surveillance statute, § 13A-11-32, Ala. Code 1975, provides, “A person commits the crime of criminal surveillance if he intentionally engages in surveillance while trespassing in a private place.” J.F.C. argues that the City of Daphne (“the City”) was required to prove that he actually secretly observed the activities of another person. Because the “courtesy officer” who saw J.F.C. “peering” through the window of the apartment could not testify that he had seen anyone in that apartment or that he had ever talked with the residents of that apartment about the incident, J.F.C. argues that the City failed to prove an essential element of criminal surveillance — that J.F.C. actually observed someone in the apartment.
The Court of Criminal Appeals, recognizing that the State had produced no evidence tending to show that anyone was actually in the apartment J.F.C. was “peering” into, held that the Legislature did not intend that § 13A-11-32 require the City to prove that J.F.C. actually saw another person in order to prove a violation of the statute. Rather, the Court of Criminal Appeals held that “[t]he prohibited act [was] surreptitious observation, coupled with the wrongful purpose of spying upon and thus invading the privacy of another person.” 844 So.2d at 602. The Court of Criminal Appeals based its decision on caselaw from Georgia and Arizona holding that the “Peeping Tom” statutes in those states do not require proof that anyone is actually in a room into which a perpetrator has looked in order to sustain a conviction under the statutes. See Chance v. State, 154 Ga.App. 543, 268 S.E.2d 737 (1980); State v. Serrano, 145 Ariz. 498, 702 P.2d 1343 (Ariz.App. Div. 2 1985). According to the Court of Criminal Appeals, our “Peeping Tom” statute is “substantially similar” to the Georgia and Arizona statutes.
After considering the record in this case, the Court of Criminal Appeals’ opinion, the cases cited in that opinion, and Judge Cobb’s dissent to that opinion, we agree with the views expressed by Judge Cobb in her dissent. We quote from Judge Cobb’s dissent below:
“J.F.C. was charged with, and adjudicated guilty of, a violation of a city ordinance that adopts § 13A-11-32, Ala. Code 1975, as a municipal offense. He was seen peering into an apartment window, but, without dispute, there was no evidence that anyone was in the apartment when J:F.C. peered inside. Section 13A-ll-32(a) states that a person commits the crime of criminal surveil *606 lance if he ‘intentionally engages in surveillance while trespassing in a private place.’ Surveillance is defined in § 13A-11-30(3), Ala. Code 1975, as the ‘[s]ecret observation of the activities of another person for the purpose of spying upon and invading the privacy of the person observed.’ ...
“The majority states that ‘it would frustrate the purpose of the statute to hold that it is necessary to prove that the defendant engaging in the surveillance actually saw another person....’ It may frustrate the intent of a majority of [the Court of Criminal Appeals] to so hold, but it would not, in my opinion, frustrate the purpose of the statute. Alabama’s statute does, in fact, clearly require proof of the observation of the activities of another person, and our application of the statute should be based on the statute’s clear language. Any ‘interpretation’ of this statute and comparison of this statute to that from other jurisdictions is, therefore, unnecessary.
“ ‘ “The Supreme Court of Alabama has also consistently stated that ‘[ple-na! statutes are to reach no further in meaning than their words.’ Clements v. State, 370 So.2d 723, 725 (Ala.1979), overruled on other grounds, Beck v. State, 396 So.2d 645 (Ala.1980) (citations omitted). See also State ex rel. Graddick v. Jebsen S. (U.K.) Ltd., 377 So.2d 940, 942 (Ala.1979) (holding that ‘penal statutes are to be strictly construed in favor of the persons sought to be subjected to their operation’) .... Furthermore, ‘[n]o person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused.’ Clements, 370 So.2d at 725.” ’
“Young Oil Co. v. Racetrac Petroleum, Inc., 757 So.2d 380, 383 (Ala.1999).
“The majority attempts to support its interpretation of the statute by comparing Alabama’s statute to those from other states. First, this exercise is unnecessary, because Alabama’s statute is clear. Second, the statutes used for comparison are dissimilar to ours. The majority notes that the Georgia Court of Appeals has- declined to require that the ‘Peeping Tom’ actually observe another person to be guilty of the offense. The Georgia statute, itself, defines a ‘Peeping Tom’ as ‘a person who peeps through windows or doors ... for the purpose of spying upon or invading the privacy of the persons spied upon and the doing of any other acts of a similar nature which invade the privacy of such persons.’ Ga.Code Ann., § 16-11-61. Clearly, the statute makes criminal the very act of spying and the invasion of another’s privacy, but does not require the observation of ‘the activities of another person,’ as Alabama’s statute does.
“For the same reason, the majority’s reliance on Arizona’s statute is misplaced. The relevant portion of § 13-1504(A)(2), Ariz.Rev.Stat., prohibits ‘looking into the residential structure ... in reckless disregard of infringing on the inhabitant’s right of privacy.’ As the Arizona Supreme Court noted, the act prohibited by this statute is looking into the structure with the requisite wrongful intent. State v. Serrano, 145 Ariz. 498, 501, 702 P.2d 1343, 1345 (Ariz.Ct.App.1985). Because Alabama’s statute requires observation of ‘the activities of another person,’ however, a comparison of Alabama’s statute and Arizona’s is inapposite.
“Although the Alabama Legislature might have intended to make criminal the mere spying into another’s residence, I firmly believe that this Court is not at liberty to so interpret the statute *607 when the clear language of the statute, which we are obliged to interpret and apply, does not make mere spying criminal. The statute makes criminal the ‘[s]ecret observation of the activities of another person,’ when that observation is accompanied by the requisite criminal intent. Courts are duty bound to strictly construe the terms of legislative mandates; they are not to engage in judicial construction, Ex parte Looney, 797 So.2d 427 (Ala.2001), even if the outcome of such judicial construction might be more desirable to the courts than the interpretation of a statute’s clear meaning. Any change desired in the meaning of the statute is for the Legislature to make.”
(Citations to the record omitted; some emphasis added; some emphasis original.) We agree, and we adopt Judge Cobb’s dissent. The evidence was insufficient to sustain J.F.C.’s conviction for criminal surveillance.
The City also argues that in the event this Court should find, as we have, that the evidence was insufficient to sustain J.F.C.’s conviction for criminal surveillance, we should, alternatively, enter a judgment against J.F.C. for the lesser offense of attempted criminal surveillance. The City relies upon this Court’s decision in Ex parte Edwards, 452 So.2d 508 (Ala.1984), in which this Court affirmed the judgment of the Court of Criminal Appeals, which had, in an opinion, reversed a conviction for second-degree murder, in accordance with an earlier ruling by this Court in that case, 452 So.2d 503 (Ala.1983), and remanded for the trial court to enter a judgment of guilty on the lesser charge of first-degree manslaughter. According to the City, J.F.C.’s presence outside the window of an apartment into which he was peering, constitutes an overt act toward the commission of the offense of criminal surveillance. Because the Court of Criminal Appeals held that J.F.C. was guilty of criminal surveillance and never reached this issue, we remand the case to the Court of Criminal Appeals to determine whether J.F.C. should be adjudicated guilty of attempted criminal surveillance.
III. Conclusion
We hold that the evidence was insufficient to support J.F.C.’s conviction of criminal surveillance. We reverse the judgment of the Court of Criminal Appeals and remand the cause to that Court for the entry of an order or for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
SEE, J., concurs in the result.
BROWN, J., dissents.
STUART, J., recuses herself.*