844 So.2d 608 (2002)
J.F.C.
v.
CITY OF DAPHNE.
CR-99-0596.
Court of Criminal Appeals of Alabama.
August 30, 2002.
Daniel Prescott Mitchell, Bay Minette, for appellant.
James M. Scroggins, Daphne, for appellee.

After Remand from the Alabama Supreme Court
WISE, Judge.
J.F.C. was convicted in the Daphne Municipal Court of criminal surveillance, a violation of Daphne City Ordinance No. 1987-8, adopting § 13A-11-32, Ala.Code 1975. Following a trial de novo in the Baldwin Circuit Court, he was adjudicated a youthful offender, based on that court's finding that he was guilty of criminal surveillance. The trial court sentenced J.F.C. to 6 months' imprisonment; that sentence was split and he was ordered to serve 60 days in the Daphne municipal jail, followed by 2 years' supervised probation. This Court affirmed J.F.C.'s conviction and sentence. J.F.C. v. City of Daphne, 844 So.2d 597 (Ala.Crim.App.2001).
On February 15, 2002, the Alabama Supreme Court reversed this Court's judgment affirming J.F.C.'s conviction for criminal surveillance, holding that the evidence was insufficient to convict J.F.C. of criminal surveillance because the evidence failed to establish that J.F.C. engaged in the "`"[s]ecret observation of the activities of another person."'" Ex parte J.F.C., 844 So.2d 604 (Ala.2002) (quoting Judge Cobb's dissent in J.F.C., quoting in turn § 13A-11-30(3), Ala.Code 1975). However, that Court ordered this Court to determine whether the evidence elicited at trial was sufficient to sustain a conviction of attempted criminal surveillance against J.F.C. 844 So.2d at 607.
*609 "A person commits the crime of criminal surveillance if he intentionally engages in surveillance while trespassing in a private place." § 13A-11-32(a), Ala.Code 1975. Section 13A-4-2(a), Ala.Code 1975, states: "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
Rule 13.2(c), Ala.R.Crim.P., provides that "[s]pecification of an offense in an indictment or information shall constitute a charge of that offense and of all lesser offenses necessarily included therein." Section 13A-1-9(a)(2), Ala.Code 1975, likewise defines an "included offense" as "an attempt or solicitation to commit the offense charged." Thus, from the outset J.F.C. was on notice that he was charged with criminal surveillance and all lesser offenses included within that offense and that he could be convicted of attempted criminal surveillance, as well as the charged offense of criminal surveillance. Moreover, given that J.F.C. presented an alibi defensenamely, that at the time of the offense he was visiting his father in Milton, Floridawe fail to see how his right to present a defense would be adversely affected or how his legal rights would be eviscerated if he were to be found guilty of attempted criminal surveillance based on the complaint charging criminal surveillance.
Here, the evidence established the following facts. On May 3, 1999, Baldwin County Deputy Sheriff Jimmy Milton was serving as an off-duty "courtesy officer" at the Lake Forest apartment complex in Daphne. Sometime after 10:00 p.m., Deputy Milton secured the grounds of the complex for the evening. This involved checking the common areas, locking the pool area, and turning out lights in several areas. As he checked to see that nothing was amiss in the complex, Deputy Milton's attention was drawn to two males outside of building 13. He recognized one of the males as J.F.C., a resident of the complex who lived in building 3. Deputy Milton was aware that people walked between building 13 and the adjacent building as a shortcut to Jackson Street. However, Deputy Milton's attention was drawn to J.F.C. and his companion because they were not in that portion of the common area used as a shortcut to the street. Instead, they were crouched directly below the window of a ground-floor apartment in building 13. As Milton approached them, he noticed that they appeared to be looking in the window of the apartment. Milton identified himself as a law enforcement officer, and he instructed the two men to stand up and turn around; however, the men fled. Milton gave chase, but he lost the two suspects. He subsequently went to J.F.C.'s apartment and knocked on his door; no one answered. Milton reported the incident to the complex manager and to the Daphne Police Department. J.F.C. was arrested and charged with criminal surveillance on May 4, 1999.
In Hubbard v. State, 562 So.2d 580, 581 (Ala.Crim.App.), aff'd, 562 So.2d 583 (Ala. 1989) (quoting Ex parte Edwards, 452 So.2d 508, 510 (Ala.1984)), this Court recognized that we have the authority to reverse a conviction and, at the same time, order the entry of a judgment of guilty on a lesser offense included within the offense the defendant was convicted of. Based on the evidence presented by the prosecution, there was sufficient evidence from which the trial court (this was a bench trial) could reasonably conclude that J.F.C. was attempting to intentionally engage in surveillance while trespassing in a private place. See § 13A-11-32, Ala.Code 1975.
Judge Cobb, in her special writing, maintains that J.F.C., because he was a resident of the complex, could not be trespassing. *610 Nor, she maintains, was J.F.C. in a private place, because he was in a common area, a part of which was used as a shortcut to Jackson Street. Her rationale is premised on the idea that with the exception of the apartments themselves, every other area of an apartment complex is a "common area." Certainly, many areas of any apartment complex are common areas: the parking lot, the laundry room, the swimming pool and various recreation areas, and other places. However, not every area of such a complex is readily or lawfully accessible by residents of that complex or is accessible 24 hours a day. Indeed, Deputy Milton testified that part of his duties was to secure the complex for the night, including locking up the swimming pool area. Thus, based on this evidence, even a resident of the complex did not enjoy 24-hour access to every common area of the complex. Moreover, it should be noted that while J.F.C. was in an area owned by the complex, whether he was in a place that could be truly termed a "common area" is questionable. Although there was evidence indicating that a portion of the common area outside building 13 was used as a shortcut, J.F.C. was not in that area. Rather, he was seen crouching directly below a window to an apartment, peering inside. Indeed, he was in a place where shrubbery or other ornamental plantings might be foundarguably not an area where people would regularly walk. Logically, no one should have been close enough to the building to look inside a window in an attempt to see into the area where the resident enjoyed a legitimate expectation of privacy. Apartment dwellers understand that by virtue of living in such close proximity to others they will have less privacy than they would if they lived in a single-family house. However, living in an apartment does not mean that an individual gives up the right to reasonably expect that he will be protected from the activities of "peeping Toms" who would peer inside his private space with either criminal intent or prurient interest. This is precisely what the Legislature was attempting to prevent when it enacted § 13A-11-32, Ala.Code 1975. Moreover, J.F.C. was aware that he was in a place where he should not have been. Once Deputy Milton spotted J.F.C. and decided to investigate further, J.F.C. ran away conduct clearly evidencing a consciousness that he was engaged in wrongful behavior.
Based on the rationale in Judge Cobb's special writing, an apartment dweller would have no recourse against a "peeping Tom" so long as the "peeping Tom" was in a "common area" of the complex and was not a trespasser. Therefore, using the logic espoused by Judge Cobb, no individual who is a resident of the complexor an invitee of a resident or of the complex managementcan ever be convicted of criminal surveillance based on his or her surveillance of another resident of the complex. This could not have been what the Legislature intended when it enacted § 13A-11-32. If so, then a resident of an apartment, townhouse, condominium, or other similarly situated dwelling located in close proximity to another dwelling would enjoy less protection under the law than the owner of a private residence enjoys. There was ample evidence elicited at trial from which the trial court could have concluded that J.F.C. was guilty of attempted criminal surveillance.
Therefore, in accordance with the directive of the Alabama Supreme Court, J.F.C.'s conviction for criminal surveillance is reversed and set aside. However, we conclude that the State clearly proved each and every element of attempted criminal surveillance, which is a lesser included offense of criminal surveillance. See § 13A-1-9(a)(2), Ala.Code 1975. J.F.C.'s presence outside the window of an apartment into which he was peering, constituted an *611 overt act toward the commission of the offense of criminal surveillance. Thus, we are authorized to apply the doctrine of Edwards v. State, 452 So.2d 506 (Ala.Crim. App.1983), aff'd, 452 So.2d 508 (Ala. 1984). See also Bohannon v. State, 564 So.2d 859 (Ala.Crim.App.1988); Borden v. State, 523 So.2d 508 (Ala.Crim.App.1987). Accordingly, this cause is remanded with directions that the trial court set aside J.F.C.'s adjudication as a youthful offender based on its finding that he was guilty of criminal surveillance. The trial court is further instructed to enter an order adjudicating J.F.C. a youthful offender, based upon the finding that he was guilty of attempted criminal surveillance, and to sentence him accordingly.
REVERSED AND REMANDED WITH DIRECTIONS.
BASCHAB and SHAW, JJ., concur. McMILLAN, P.J., and COBB, J., concur in part and dissent in part, each with opinion.
McMILLAN, Presiding Judge, concurring in part and dissenting in part.
I agree with the conclusion in Judge Cobb's special writing that the main opinion points out the need for revising the laws concerning privacy and trespass where communal living is involved, and I further agree that it is a matter for the Legislature to address, rather than the courts. I do not agree with Judge Cobb's conclusions concerning Ex parte Edwards, 452 So.2d 508 (Ala.1984), and any impact that the dissenting opinion may have as to this case.
COBB, Judge, concurring in part and dissenting in part.
As the lone dissenter when this case was initially before this Court, I was pleased to learn of the Alabama Supreme Court's reversal of the affirmance which prompted my dissent. Unfortunately, I find myself once again in disagreement with portions of majority's opinion in this matter.
I concur in that part of the majority's opinion that, in compliance with the directive of the Alabama Supreme Court, reverses J.F.C.'s conviction for criminal surveillance. I disagree with the majority's conclusion that the prosecution proved the elements of attempted criminal surveillance. Therefore, I dissent from that portion of the majority's opinion which directs the trial court to enter an order adjudicating J.F.C. a youthful offender based on the finding that he was guilty of that offense.
Section 13A-11-32(a), Ala.Code 1975, provides, "A person commits the crime of criminal surveillance if he intentionally engages in surveillance while trespassing in a private place." Contrary to the majority's assertion, the State utterly failed to establish that J.F.C. was trespassing in a private place.
The testimony at trial established that J.F.C. was a resident at the apartment complex where he was accused of criminal surveillance. J.F.C. was alleged to have been peering into a ground-floor window of an apartment building. The side of the building where the apartment window was located was next to Jackson Street, which connects to Main Street, a main thoroughfare. The security officer testified that people walk between the buildings to reach Jackson Street.
As a resident of the apartment complex, J.F.C. had a right to access the common areas of property. The City presented no testimony or other evidence indicating that J.F.C. had been directed to remain off the property. Because J.F.C. was legally on the property, he was not trespassing. Furthermore, J.F.C. was not in a "private place," as that term is defined in the statute. Section 13A-11-30(2), Ala.Code 1975, *612 defines a private place as, "A place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but such term does not include a place to which the public or a substantial group of the public has access." (Emphasis added.) The area outside the apartment was a common area; logic and the relevant law dictate that a common area to which members of the public have access cannot also be considered a private area.
Because the City did not, in fact, establish the elements of attempted criminal surveillance, I dissent from that portion of the majority's opinion holding that it did. While I agree with the practical impact of the majority's decision, and while I agree that the statutes as they are written and as I believe they must be construed seem to afford residents of apartments or similar dwellings less protection under the law than the owners of private residences, the problem is one for the Legislature to address. The Legislature has specifically defined a "private place" to exclude places to which the public or a substantial group of the public has access. Moreover, J.F.C. was a resident of the apartment complex and had access to the common areas. The conduct presented in this case does not violate any criminal statute. Modification of the law is necessary, as the facts in this case demonstrate. But that is a matter for the Legislature, not this Court, to address.
Finally, I am compelled to state that I believe that the precedent established in this case is a dangerous one. J.F.C. was charged with criminal surveillance. Although J.F.C. successfully appealed his adjudication on that charge and the Alabama Supreme Court determined that the evidence was insufficient to support the conviction, the Supreme Court nonetheless directed this Court to determine whether the elements of attempted criminal surveillance had been established. While I am aware of Ex parte Edwards, 452 So.2d 508 (Ala.1984), and its progeny, I believe that their application in this case is inappropriate. The Supreme Court, in Edwards, held that, even though the defendant's conviction for capital murder was reversed on grounds of insufficient evidence, the cause could be remanded for entry of judgment on the lesser-included offense of manslaughter, noting that the jury had been instructed on the lesser-included offense. Id. at 509-10. Justices Jones, Almon, Shores, and Adams dissented in Edwards. The dissenting Justices noted that, while the majority's resolution of the case might promote judicial economy, it was legally incorrect, because it ordered the trial judge to enter a judgment of conviction without affording the defendant a trial on that charge, and without the fact-finder rendering a guilty verdict.
Like the dissenting Justices in Edwards, I am deeply troubled by any procedure that leads to a judgment of conviction in the complete absence of a trial on, and defense against, the charge for which the defendant is ultimately convicted. Such a procedure is completely at odds with the constitutional provisions that guarantee a fair trial and a right of defense. Not only is this a dangerous precedent because it eviscerates the defendant's rights, I believe it is a precedent that cannot withstand further legal scrutiny. This procedure utterly fails to comport with long-standing constitutional principles, and I believe that it will not stand. Therefore, I urge the Alabama Supreme Court to reconsider the principle announced in Ex parte Edwards.