After Remand from the Alabama Supreme Court
J.F.C. was convicted in the Daphne Municipal Court of criminal surveillance, a violation of Daphne City Ordinance No. 1987-8, adopting § 13A-11-32, Ala. Code 1975. Following a trial de novo in the Baldwin Circuit Court, he was adjudicated a youthful offender, based on that court's finding that he was guilty of criminal surveillance. The trial court sentenced J.F.C. to 6 months' imprisonment; that sentence was split and he was ordered to serve 60 days in the Daphne municipal jail, followed by 2 years' supervised probation. This Court affirmed J.F.C.'s conviction and sentence. J.F.C. v. City of Daphne, [Ms. CR-99-0596, May 25, 2001] 844 So.2d 597 (Ala.Crim.App. 2001).
On February 15, 2002, the Alabama Supreme Court reversed this Court's judgment affirming J.F.C.'s conviction for criminal surveillance, holding that the evidence was insufficient to convict J.F.C. of criminal surveillance because the evidence failed to establish that J.F.C. engaged in the "`"[s]ecret observation of the activities of another person."'"Ex parte J.F.C., [Ms. 1002039, February 15, 2002] 844 So.2d 604 (Ala. 2002) (quoting Judge Cobb's dissent in J.F.C., quoting in turn §13A-11-30(3), Ala. Code 1975). However, that Court ordered this Court to determine whether the evidence elicited at trial was sufficient to sustain a conviction of attempted criminal surveillance against J.F.C. 844 So.2d at 607. *Page 609 
"A person commits the crime of criminal surveillance if he intentionally engages in surveillance while trespassing in a private place." § 13A-11-32(a), Ala. Code 1975. Section 13A-4-2(a), Ala. Code 1975, states: "A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
Rule 13.2(c), Ala.R.Crim.P., provides that "[s]pecification of an offense in an indictment or information shall constitute a charge of that offense and of all lesser offenses necessarily included therein." Section13A-1-9(a)(2), Ala. Code 1975, likewise defines an "included offense" as "an attempt or solicitation to commit the offense charged." Thus, from the outset J.F.C. was on notice that he was charged with criminal surveillance and all lesser offenses included within that offense and that he could be convicted of attempted criminal surveillance, as well as the charged offense of criminal surveillance. Moreover, given that J.F.C. presented an alibi defense — namely, that at the time of the offense he was visiting his father in Milton, Florida — we fail to see how his right to present a defense would be adversely affected or how his legal rights would be eviscerated if he were to be found guilty of attempted criminal surveillance based on the complaint charging criminal surveillance.
Here, the evidence established the following facts. On May 3, 1999, Baldwin County Deputy Sheriff Jimmy Milton was serving as an off-duty "courtesy officer" at the Lake Forest apartment complex in Daphne. Sometime after 10:00 p.m., Deputy Milton secured the grounds of the complex for the evening. This involved checking the common areas, locking the pool area, and turning out lights in several areas. As he checked to see that nothing was amiss in the complex, Deputy Milton's attention was drawn to two males outside of building 13. He recognized one of the males as J.F.C., a resident of the complex who lived in building 3. Deputy Milton was aware that people walked between building 13 and the adjacent building as a shortcut to Jackson Street. However, Deputy Milton's attention was drawn to J.F.C. and his companion because they were not in that portion of the common area used as a shortcut to the street. Instead, they were crouched directly below the window of a ground-floor apartment in building 13. As Milton approached them, he noticed that they appeared to be looking in the window of the apartment. Milton identified himself as a law enforcement officer, and he instructed the two men to stand up and turn around; however, the men fled. Milton gave chase, but he lost the two suspects. He subsequently went to J.F.C.'s apartment and knocked on his door; no one answered. Milton reported the incident to the complex manager and to the Daphne Police Department. J.F.C. was arrested and charged with criminal surveillance on May 4, 1999.
In Hubbard v. State, 562 So.2d 580, 581 (Ala.Crim.App.), aff'd,562 So.2d 583 (Ala. 1989) (quoting Ex parte Edwards, 452 So.2d 508, 510
(Ala. 1984), this Court recognized that we have the authority to reverse a conviction and, at the same time, order the entry of a judgment of guilty on a lesser offense included within the offense the defendant was convicted of. Based on the evidence presented by the prosecution, there was sufficient evidence from which the trial court (this was a bench trial) could reasonably conclude that J.F.C. was attempting to intentionally engage in surveillance while trespassing in a private place. See § 13A-11-32, Ala. Code 1975.
Judge Cobb, in her special writing, maintains that J.F.C., because he was a resident of the complex, could not be *Page 610 
trespassing. Nor, she maintains, was J.F.C. in a private place, because he was in a common area, a part of which was used as a shortcut to Jackson Street. Her rationale is premised on the idea that with the exception of the apartments themselves, every other area of an apartment complex is a "common area." Certainly, many areas of any apartment complex are common areas: the parking lot, the laundry room, the swimming pool and various recreation areas, and other places. However, not every area of such a complex is readily or lawfully accessible by residents of that complex or is accessible 24 hours a day. Indeed, Deputy Milton testified that part of his duties was to secure the complex for the night, including locking up the swimming pool area. Thus, based on this evidence, even a resident of the complex did not enjoy 24-hour access to every common area of the complex. Moreover, it should be noted that while J.F.C. was in an area owned by the complex, whether he was in a place that could be truly termed a "common area" is questionable. Although there was evidence indicating that a portion of the common area outside building 13 was used as a shortcut, J.F.C. was not in that area. Rather, he was seen crouching directly below a window to an apartment, peering inside. Indeed, he was in a place where shrubbery or other ornamental plantings might be found — arguably not an area where people would regularly walk. Logically, no one should have been close enough to the building to look inside a window in an attempt to see into the area where the resident enjoyed a legitimate expectation of privacy. Apartment dwellers understand that by virtue of living in such close proximity to others they will have less privacy than they would if they lived in a single-family house. However, living in an apartment does not mean that an individual gives up the right to reasonably expect that he will be protected from the activities of "peeping Toms" who would peer inside his private space with either criminal intent or prurient interest. This is precisely what the Legislature was attempting to prevent when it enacted § 13A-11-32, Ala. Code 1975. Moreover, J.F.C. was aware that he was in a place where he should not have been. Once Deputy Milton spotted J.F.C. and decided to investigate further, J.F.C. ran away — conduct clearly evidencing a consciousness that he was engaged in wrongful behavior.
Based on the rationale in Judge Cobb's special writing, an apartment dweller would have no recourse against a "peeping Tom" so long as the "peeping Tom" was in a "common area" of the complex and was not a trespasser. Therefore, using the logic espoused by Judge Cobb, no individual who is a resident of the complex — or an invitee of a resident or of the complex management — can ever be convicted of criminal surveillance based on his or her surveillance of another resident of the complex. This could not have been what the Legislature intended when it enacted § 13A-11-32. If so, then a resident of an apartment, townhouse, condominium, or other similarly situated dwelling located in close proximity to another dwelling would enjoy less protection under the law than the owner of a private residence enjoys. There was ample evidence elicited at trial from which the trial court could have concluded that J.F.C. was guilty of attempted criminal surveillance.
Therefore, in accordance with the directive of the Alabama Supreme Court, J.F.C.'s conviction for criminal surveillance is reversed and set aside. However, we conclude that the State clearly proved each and every element of attempted criminal surveillance, which is a lesser included offense of criminal surveillance. See § 13A-1-9(a)(2), Ala. Code 1975. J.F.C.'s presence outside the window of an apartment into which he was peering, constituted an *Page 611 
overt act toward the commission of the offense of criminal surveillance. Thus, we are authorized to apply the doctrine of Edwards v. State,452 So.2d 506 (Ala.Crim.App. 1983), aff'd, 452 So.2d 508 (Ala. 1984). See also Bohannon v. State, 564 So.2d 859 (Ala.Crim.App. 1988); Borden v.State, 523 So.2d 508 (Ala.Crim.App. 1987). Accordingly, this cause is remanded with directions that the trial court set aside J.F.C.'s adjudication as a youthful offender based on its finding that he was guilty of criminal surveillance. The trial court is further instructed to enter an order adjudicating J.F.C. a youthful offender, based upon the finding that he was guilty of attempted criminal surveillance, and to sentence him accordingly.
REVERSED AND REMANDED WITH DIRECTIONS.
Baschab and Shaw, JJ., concur. McMillan, P.J., and Cobb, J., concur in part and dissent in part, each with opinion.