The appellant, Robert Dale Gilmore, appeals from his conviction of robbery in the third degree, a violation of §13A-8-43(a)(2), and sentence of 25 years, upon application of the Habitual Felony Offender Act; the State proved six prior convictions.
Gilmore was arrested for theft of property in the second degree; he was subsequently indicted and convicted of robbery in the third degree based on the following set of circumstances. Gilmore and a female companion were observed by the loss-prevention security agent at the Alexander *Page 159 
City Super Wal-Mart discount store taking air tools from the shelves, opening them, and placing them inside his pants and jacket pockets. Gilmore then walked to another area of the store, where he removed a set of six-by-nine inch Pioneer brand speakers from the shelf. He took the speakers to the hardware department, where he opened the packaging and concealed the speakers in his pants. Gilmore was then followed to the garden center of the store by the loss-prevention agent who instructed the assistant manager to pursue Gilmore, as he separated from the female; she was stopped in the parking lot by the loss-prevention agent and another employee. Gilmore then left the garden center, but upon seeing his female companion and the Wal-Mart employees in the parking lot, he turned and reentered the store. The assistant manager followed him back into the store. He observed Gilmore "dumping stuff into a buggy out from under his coat." The assistant manager and another employee approached Gilmore and told him that they needed to speak with him in the back of the store. The assistant manager then walked on one side of Gilmore while the other employee walked on the other side, and a female employee followed with the shopping cart containing the merchandise. En route, the assistant manager testified that he instructed Gilmore several times to keep his hands out of his pockets. Gilmore asked why and the assistant manager responded that he did not know if Gilmore might be carrying a knife or a gun. Gilmore responded, "If you want to see a knife," and reached for his pockets. The two employees grabbed his hands and walked him to the back office. One of these employees testified as follows:
 "A. He said, `If you want to see a knife,' and he started toward his pockets. He started to stick his hands in his pockets and that's when I grabbed one arm and Jeremy grabbed one arm.
 "Q. So, he actually told you, `If you want to see a knife,' and he went for his pockets.
 "A. Yes.
 "Q. So at this point, you said you had one arm and Jeremy had the other arm.
 "A. Yes.
 "Q. Are these arms all twisted up behind Mr. Gilmore's back?
 "A. No. I had his left arm with my left hand and his jacket with this hand, and we walked to the back like that
 "Q. Okay. And tell us what happened next.
 "A. I mean, there wasn't really — we walked to the back like that. He didn't really struggle and we didn't really force him to the back. After we grabbed him, walked from there to the Ad office in the back. One of the offices. When we got toward the door back there to go into the office, there is a fire exit door and the door to the office right here, and when we got there in that little corner he said, `Man, y'all can let me go. I'm not going nowhere.' I let him go at that point. We were at the office. Jeremy was trying to get in the door, opened the door to get in. He broke toward the fire exit door. Jeremy grabbed him. He started jumping around out there in the hallway up against the wall. I finally got him. At that point, that's when we grabbed his arm and put it up behind his back and put him on the floor at that point."
Thereafter, another struggle ensued as Gilmore tried to escape; however, he was again pinned to the floor by two employees. The assistant manager testified that the female employee with the shopping cart came in the office following the struggle and placed the items on the desk so that reports could be written. On cross-examination, *Page 160 
the assistant manager affirmed that no merchandise was removed from Gilmore or his clothing.
Following this testimony, the State rested and the defense moved for a judgment of acquittal because the struggle occurred after Gilmore had discarded the merchandise and after the theft was complete. Thus, the defense argued that force was not used to acquire or to escape with the property and that thus no robbery occurred. The State responded that because Gilmore implied that he had a knife as he was walked back to the office and because he struggled to escape, force was used and Gilmore committed a robbery. The trial court denied the motion but charged the jury on robbery in the third degree and theft in the third degree.
In Franklin v. State, 854 So.2d 153
(Ala.Crim.App. 2002), this court addressed a factual situation almost identical to the factual situation in the present case. A security officer in a J.C. Penney department store observed Jamie Franklin take items of clothing and put them in her bag. He began following Franklin and her companion, who soon began walking in different directions. Franklin headed for the exit and, after passing the checkout, she dropped her bag and left the store. The officer picked up the bag and followed her outside; he asked her to return to the store. Once inside, she attempted to escape and struggled. They fell to the floor and she bit his arm. "It took several people considerable time to subdue her and pry his arm from her mouth." 854 So.2d at 154. She also told him that she had given him AIDS. Franklin was convicted of robbery in the third degree; however, her jury was also instructed on theft of property in the third degree, as a lesser-included offense. She argued, like Gilmore, that because the altercation occurred well after the abandoned property had been recovered, the State had failed to prove robbery.
 "Section 13A-8-43(a)(2), under which the appellant was indicted, defines one alternative of third-degree robbery as follows: `A person commits the crime of robbery in the third degree if in the course of committing a theft [she t]hreatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.' Section 13A-8-2(1) defines `theft of property,' in pertinent part, as follows: `A person commits the crime of theft of property if he [k]nowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property.' The phrase `in the course of committing a theft' is defined by § 13A-8-40(b) as `embrac[ing] acts which occur in an attempt to commit or [in] the commission of theft, or in immediate flight after the attempt or commission.'
 ". . . .
 "The rule in Alabama is that the use of force or the threat of imminent use of force to merely effect an escape, after the property taken has been abandoned, does not supply the element of use of force or the threat of the imminent use of force necessary to make the taking of a robbery. See Ex parte Sapp, 497 So.2d 550 (Ala. 1986); Banks v. State
[575 So.2d 1244 (Ala.Crim.App. 1991)]; Casher v. State [469 So.2d 679 (Ala.Crim.App. 1985)]; Harris v. State [451 So.2d 406
(Ala.Crim.App. 1984)].
 "Because the State failed to prove an essential element of the charge of third-degree robbery under § 13A-8-43(a)(2), i.e., the threat of imminent use of force that must have been used in the course of committing the theft, the appellant's robbery conviction cannot stand. Although *Page 161 
the State failed to prove an essential element of robbery, it clearly proved each and every element of theft of property (which embraces attempted theft[1]) a lesser-included offense of robbery, the crime charged. See Ramsey v. State, 441 So.2d 1065 (Ala.Crim.App. 1983); § 13A-1-9(a)(2).
 "`It is well established that if an appellate court holds the evidence insufficient to support a jury's guilty verdict on a greater offense, but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment on that lesser included offense, provided that the jury was charged on the lesser included offense.' "Ex parte Roberts, 662 So.2d 229, 232 (Ala. 1995). Accord Ex Parte Edwards, 452 So.2d 508
(Ala. 1984). See, e.g., J.F.C. v. City of Daphne, 844 So.2d 608 (Ala.Crim.App. 2002).
 "The instant case presents a clear factual situation to which the doctrine expressed and approved in Edwards v. State, 452 So.2d 506
(Ala.Crim.App. 1983), aff'd, 452 So.2d 508
(Ala. 1984), and restated in Ex parte Roberts, supra, may be applied. See also Borden v. State, 523 So.2d 508 (Ala.Crim.App. 1987); Pack v. State, 461 So.2d 910
(Ala.Crim.App. 1984). (The attorney general states in his brief to this court that, if we should find the State's evidence insufficient to support a third-degree robbery conviction, we should follow the Edwards procedure). The trial court correctly instructed the jury, at the appellant's request, on the lesser-included offense of third-degree theft of property.
 "[1] An attempt is defined by § 13A-4-2(a), Ala. Code 1975, as follows: `A person guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.'"
Franklin v. State, 854 So.2d at 154-55.
Based on the authority of Franklin v. State, supra, Gilmore's conviction of robbery in the third degree is due to be vacated, and this cause remanded for entry of a judgment of guilty as to theft in the third degree. Gilmore should then be sentenced accordingly. A return should be filed with this court reflecting such judgment and sentence within 28 days of this opinion.
REMANDED WITH INSTRUCTIONS.*
BASCHAB and WISE, JJ., concur.
COBB and SHAW, JJ., concur in the result.
* Note from the reporter of decisions: On February 16, 2007, on return to remand, the Court of Criminal Appeals affirmed, without opinion.